Your Honors, good morning. Lawrence Slater appearing for the plaintiff in this case, complaining party, and I do would like to reserve two minutes at the end. Your Honors, this case involves a parcel of property we refer to in the briefs as the New River property. My client is BFOW. BFOW purchased the property from the bankruptcy court, paid $125,000 for $125,000. Out of that money, the debtor in this bankruptcy case has a claim for half the money, and our dispute concerns the other half of the money. What we're asking the court to do is to look into the record and look into the decision of Judge Marler of the bankruptcy court, and I know we gave you a number of exhibits, but I'd have you look at Exhibit 111 is his actual order. We had them numbered in different ways out of our notebook, but in Judge Marler's order, he looked through the record and he found that in a prior case, which is Adversary 87-199, that there was a judgment by Judge Wolfe, and that would be Exhibit No. 7-9, and what Judge Marler said is he looked at Judge Wolfe's judgment, he looked at the transcript, and he concluded that the other half of the property, which was owned by either Mr. Spain or Mr. Stringham, that that half of the property was transferred to the debtor, to Norma Hurt, and that was his decision. And based on that decision, Judge Marler determined that the debtor was the debtor. Alito, I think that would have been the case if the claim that was the subject of the adversary action was for $5,000 due on a promissory note. There was a claim of Mr. Spain for $5,000 due on a promissory note that he gave up in the settlement, and it states that in the judgment. Additionally to that, Mr. Spain had a ---- Alito, but how does that ---- I guess what I don't understand is how can a bankruptcy court, in essence, quiet title to the property by simply ordering the property transferred rather than discharging or denying the claim? Okay. In the bankruptcy court, the debtor has this property. The property is being sold, and the debtor is claiming her interest into the property. And the claim is only for $5,000. So you tell me the property was sold for $125,000. So why wouldn't the answer be, if the claim was legitimate, to simply give $5,000 out of the amount in the court's escrow account to Mr. Spain or Mr. Stringham, whoever filed the claim, and call it even? The $5,000 was a lien claim. The 50 percent interest in the property is a title claim. Totally different claim. Well, that's why I think it is a different claim. Okay. I agree. The claim was for $5,000. No, the claim was no, no. The $5,000 claim came years afterward. This is a property acquired in 1956 in which Spain and Stringham each had an interest in this property unrelated to this $5,000 claim. But as I understand it, it was Mr. Pace who received $5,000 from Stringham or Spain after a fire at the lumberyard, and that the note was supposedly secured by a lien on Pace's half interest in the property, right? That, yeah, and that claim was given up in this acquired title proceeding. So why doesn't Mrs. Hertz still have a half interest in the property, which was awarded to her? Absolutely, she does. She's claiming 100 percent, not half. That's our problem. Okay. And I guess I'm agreeing with you. Why is she entitled to more than half? Well, then I can sit down and be done. I have a different view, so maybe let me ask you this. It seems to me, whether it was right or wrong or indifferent for the title to have been quieted in the early, in the 7199 case, the Bankruptcy Court order on its face did just that. That is, it said, you know, any property that's not crossed out, and the word out is not written opposite, yet, is transferred. So, you know, I don't – I'm having a lot of trouble seeing how one can go behind that clear order, particularly since Sprains, Sprains, Spain, Spain, appealed that very judgment on essentially the same footing that's being urged now. That is, that he wasn't really a party, and he couldn't – he didn't have any interest, and he abandoned that appeal. And so to me, the judgment is now as final as can be, whether it was right, wrong or indifferent. Okay. Let me agree with you, judgment's final. I'm not disputing that. Okay. But what I'm saying to you is I'm different. I think this is a question of law. You have to look at the judgment, and I disagree with your reading on its face. And let me just tell you why. A judgment can have many parts. Yes. A judgment can say things that are crossed out or not crossed out, those all go to her. Confirmed in her, not awarded to her. Yes. Okay. Also, it says it incorporates the transcript. Okay. Also, I'd have you read the transcript. It's really clear. And let me tell you, Judge Marler says that – this is what I disagree with in his finding. He says all the parties agreed unanimously, Norma Heard gets 100 percent. Read it. And then he cites the transcript. Yes. And I cited for you the transcript where it says the attorneys are reading into the record that – Yes, but you see, the problem is that the judgment was appealed and left intact. I'm with you. But as it stands, the judgment still only gives Norma Heard half because the judgment says this is a judgment and it says it incorporates the settlement right into the record, and the judge hand wrote, as amended by Mr. Pace. And what was the handwriting of Mr. Pace? He wrote a half Spain. It was written on to the attachment. But that doesn't – at most it creates an ambiguity. I mean, at most. Okay. But it was appealed on the very footing that you're arguing now, that is, that that did not effect a complete transfer. But let me refer you, because we have it in the file here, the actual ruling on the appeal. I quoted you some language in my brief, and in that language that I quoted for you, the appeals court says it does not appear on the face of this judgment that Norma Heard got 100 percent of this property. That's what this Court, different judges maybe, had said. And I referred that to you to say, look, the Ninth Circuit on the appeal, they did not determine that Spain has zero interest in the property. Yes. Okay. I'm just – so you say ignore the fact that Spain appealed, made the same pitch, and failed to prosecute his appeal. I know you can appeal ten different things in any judgment. He appealed on a basis that he thought he didn't get no interest in the property. But he just backed off, so it left the judgment. He backed off his appeal. Okay. So as it stands, I'm asking you to interpret as a question of law, interpret the judgment, and in interpreting the judgment, read the transcript that the judgment relied on, where the transcript specifically says, Attorney Wolfers, Spain keeps half interest in the property. And it says in the judgment, we incorporate the transcript. It says in the judgment, we incorporate what Spain wrote, what Pace wrote onto the document, and Pace wrote half Spain. And I'd also have you look at the language that you're relying on that says Norma Hurt got it. She only had half to begin with. She didn't have a disputed claim to the other half. And then it says it's confirmed to her as her sole and separate property. I would expect different language. I would expect it to say, we award her Spain's interest. We deed her his interest. Not confirming to her. And I want to stop, excuse me, because my time's up. But before you go, I just want to make sure I've got the record cites correct. It's Wolfers' dialogue is at excerpt of record 52, where he speaks about the fact that Spain keeps half the property, Norma gets the other half. Am I correct? It's Exhibit 7-8. I don't want an exhibit number. I want an excerpt of record citation. That's the way you're supposed to present it to us. That's what our rules require. What is the excerpt of record page at which I can find the dialogue that you are referring to? I can't tell you that at this minute, but I can tell you that it's in the exhibit that we filed with you, and I quoted it right in my brief. Well, counsel, it's your obligation to comply with our procedural rules. And the reason that we have the parties paginate the excerpts of record sequentially is so that we can avoid just this kind of problem, because exhibit numbers get changed from proceedings before trial, at trial, after trial, and on appeal. I appreciate that. I'll, in my time back, if I can come back, I'll give you that. If you would. And then the other one that I would like you to confirm for me is that you are referring to excerpt of record 40, which is where apparently Mr. Pace wrote half Spain on the list of cash properties. Okay. I'll get you that, too. Anything else I should look at in order to weigh your argument, I'd like to know what those are. Thank you. Good morning. I'm Greg Eagleburger. I represent Mrs. Hurt. We've talked before, Mr. Eagleburger, haven't we? We have, Your Honor. On this case. Too many times, I think. Mr. Pace and Mr. Spain are joining us again today. Very well. They seem, even though they are not a party to this appeal. I first want to address your concern. Up until the time of settlement in 1990, on the second day of trial, after the judge has said, words to the effect, I don't believe what's going on here, Spain, up until that time, Spain did have a one-half interest in the New River property. That's uncontested, right? In the settlement, which happened the day after, Spain's one-half was given up in the settlement. And it was the statement that the judge wrote one-half Spain is not correct. Mr. Spain. But it does appear in that exhibit at 40, doesn't it, which incorporated into its judgment? It does, Your Honor. It incorporates the settlement agreement with the notation one-half. But the specific transcript will tell you that Mr. Pace put that on the document. And the transcript will also tell you that that notation is meaningless because it does not contain the three attributes that it's marked out, it's initialed, and that it is, in fact, out the ---- What do we do with the transcript that I was asking Mr. Slater about, ER-52, where Mr. Wolfers explains to the court essentially what the effect of the judgment of the settlement agreement is? Your Honor, in that regard, I testified at the trial of this matter, right, about that, and I have no memory. I understand that it's in the transcript. We are in a courtroom about four times as big as this one, and I did not agree to that. I don't even think I ever heard that, but the assumption is that it's in the transcript. You are quoted at the ---- do you have the transcript before you, 52? You are quoted by the court reporter as speaking right after Mr. Wolfers speaks. But not in a ---- So you're saying you didn't hear what he said? I don't have any memory of him saying that. Now, let me explain that the judgment that was presented and that was appealed, right, specifically said that the property on Exhibit A to the judgment, and that's a clean sheet of the properties, are awarded to Mrs. Hurt as her sole and separate property without claim or lien of any other person. Well, that was ---- when you say clean sheet, does that include interlineations or not? No. No, it did not. Mr. Eagleburger, I have a problem here. Yes, ma'am. Perhaps you can help me, because I'm pretty new to this litigation and you aren't. Okay. Spain claims $5,000 is owed him because he has a lien and he goes into bankruptcy court to validate that lien against $5,000. He also owns one-half the property. Yes, sir. Are you telling me that a creditor who goes in to get paid a debt loses the 50% equity that he has in the property because he goes in to get his debt paid? No, Your Honor. What I'm saying ---- What consideration did Spain get for losing half of his equity out of the bankruptcy court? Spain got consideration that he agreed to. Mr. Pace ---- What was that consideration, sir? Your Honor, it is not being involved in the litigation anymore, but ---- So he goes in to get his $5,000, he doesn't get his $5,000, and he loses 50% of his equity, and you think that's right? I think that, Your Honor, that that is what the court determined, what the parties agreed to, and what the ---- What jurisdiction did the court have over Mr. Spain's 50% of the equity? Mr. Spain appeared in that litigation for purposes of the settlement because he was a creditor. As a creditor, I want my $5,000. That means that he's going to lose 50% of his equity because he walks in the door to get his $5,000 creditor's claim paid? That doesn't seem right, does it? Your Honor, Mr. Spain was included specifically in the settlement because we were settling, as the court determined ---- You were settling his claim. We were settling all of the claims for all of the property, including. We did, in fact, and this Court has upheld the decision in 87-199, we were settling global matters when we entered into that settlement, including any claims to any of the properties, and that's what the judgment says, awarding all of those properties to Mrs. Hurt, allowing the dismissal of all of the claims for the specific purpose of ending what was then 12 years of litigation with what I call the alphabet companies of Mr. Pace, who, in fact, were the ones that threw Mrs. Hurt into the involuntary bankruptcy. This Court affirmed 87-199. Mr. Spain appealed the judgment in 87-199, both to the BAP and this Court, and this Court determined that his claims were nonexistent, that he had agreed through Mr. Pace, who was his agent, who was admitted or who represented to the Court in the bankruptcy. Are you saying to me that a creditor who has a claim, when he goes in to have that claim settled in bankruptcy, his 50 percent ownership of that same property is regarded as a claim which he is tendering for quiet title purposes in order to get his 50 percent, $5,000 paid? No. I am saying to you that at the close of the first day of trial, Mr. Spain agreed in the settlement that he would give up his property. To grant, convey, and transfer his 50 percent of the property. Correct. Where is that language, sir? It is signed in the settlement agreement. I didn't think so. Mr. Pace signed for Mr. Spain, sir, and Mr. Spain appealed that matter of the effect of authority to this Court, and this Court rejected that argument. Where is the language of conveyance of Mr. Spain's 50 percent interest in the New River property? It is contained in the judgment and order of April 3, 1990, in which it says all of the properties on Exhibit A are confirmed in Mrs. Hurt as her sole and separate property, and Exhibit A contains the New River property. And it says one-half Spain. The exhibit that the settlement agreement contains one-half Spain, written on it by Mr. Pace, but not agreed to by anybody because of the fact that it's not marked as out, not noted as out, not marked as out, and not initialed as out. Well, because Mrs. Spain's and Mrs. Pace's are getting half of it. If you take the initial, if you cross it out, then she's getting none of it. But the agreement, sir, clearly was, and the Court below found in 87-199, you guys find in 87-199, and the bankruptcy court in this trial found that only if it was marked out, was designated out, and initialed. It's initialed and signed for Mr. Spain. Mr. Spain knew that the day of the settlement, never has raised himself the issue of his ownership of the one-half, and does not now. The only person to raise the issue is BFOW in this Court, in this action. Mr. Eaglebarger, if I were to go to the original court file and look at Exhibit A that was attached to the judgment, wouldn't I find all these interlineations and strikeouts on the original? You would not find, Your Honor, I have not looked at the original judgment to, you would not find what was required to take it out. I'm looking at Excerpt of Record, page 40, and it has a number of strikeouts. It has a number of what appear to be initials at various places, including initials that are immediately above and immediately below the notation half Spain. And I'm wondering why that doesn't comport with what the Court ordered with regard to any handwritten changes that were made. The initials are for the properties above and below, and not for one-half Spain. Well, there's an initial below Mr. Spain's, or the New River property, directly below the words one-half Spain, and the only way to interpret that is that it relates to the property immediately adjacent to it, which is New River and 7. Well, it also relates to the property immediately below it. But there's no change to the property immediately below it. That's the 5313 East Polk property, and there's no interlineation through that. May I see your? Sure. Of course. It relates to the property at 2920 West Lomita. How can I tell that, though? It's underneath the half Spain, which is the next property below that. Do you know what I'm saying? That is one of the issues that has been taken by the trial court and decided. All I can tell you is he had full information. Mr. Woofer testified, I testified, Mr. Spain did not. But isn't the problem that we have here, we've got one bankruptcy judge trying to interpret the order and judgment of a different bankruptcy judge. I mean, wasn't he looking at the prior bankruptcy court proceeding when? Yes. He reviewed the entire administrative and adversary of 87199, as he indicates in his. His argument is that we have to go with his factual determination as to what the first bankruptcy judge intended. The entire three days of trial was a factual trial, Your Honor. Okay. Thank you. All right. Mr. Slayer. Thank you, Your Honors. Quick comment on the legal interpretation, not factual, on what was meant in that  I think it's important to point out that in the case of 87199, there was a modification on the half-Spain language. I would refer you to 640 in the transcripts, where the judge hand-wrote. He got a typed order, and Judge Wolf hand-wrote that this was read on the record in open court, discussed by all parties, finally approved as modified by, and the judge wrote, Pace individually. So the judge hand-wrote that he was accepting Pace's modification. That's the half-Spain. As the Court had asked, the transcript pages are 628 and 629 are those pages that I was referring to. And I'm referring now to page 640. Look at Wolf's order, where he says that he incorporated this Pace thing, the half-Spain language. And as counsel says, it was written by Mr. Pace and agreed to by no one. I would submit to you that it was hand-written to the judge. That, to me, has special meaning, because you turn these typed-up things to the judge. And when they hand-write it, you know they were thinking about the case when they wrote it. I think I'm up for time. So thank you. Okay. Any other questions? I'll do my best to figure it out. Okay. You were referring to 629, where Mr. Wolfer says, The parties have all agreed that Mr. Andrews' Spain has an undivided one-half interest in that property, and no one is contesting that. Yeah. And I connect that with 628, and because if you put it all together, it starts off with a long quote saying that if she gets the properties, if it's struck out, interlineated, and whatever and whatever, and then Spain keeps his. It's one big quote. And if you look at it all together, you can see that Judge Marler made an error. Thank you. All right. Thank you, counsel. The matter just argued will be submitted. And we'll next hear argument in Gotti v. Reliance standard. Thank you.
judges: Rymer, Tallman, Bea